**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **CRIMINAL ACTION FILE** |
| **v.** | ) | |
| | ) | **NO. 1:02-CR-730-14-AT-AJB** |
| **JULIO RAMOS,** | ) | **[Superseding]** |
| | ) | |
| Defendant. | ) | |

**UNITED STATES MAGISTRATE JUDGE'S**
**FINAL REPORT AND RECOMMENDATION**

Julio Ramos moves to dismiss the superseding indictment, on the grounds that

the Court lacks subject matter jurisdiction over the charges against him contained in

that indictment.  [Doc. 744].  The Government responded in opposition.  [Doc. 747].

For the following reasons, the undersigned **RECOMMENDS** that the motion be

**DENIED**.[1]

### I.    Introduction

Ramos is charged in Counts One and Eight of the superseding indictment.

Count One charges Ramos with conspiring to violate 18 U.S.C. § 1962(c),[2] that is, by

---

[1]    Ramos was a fugitive until he was arrested this year on charges in Gwinnett County, Georgia.  [Doc. 723].

[2]    Title 18 U.S.C. § 1962(c) provides that

It shall be unlawful for any person employed by or associated with any

being employed and associated with an enterprise (a street gang known as the Brown Side Locos) which was engaged in and the activities of which affected interstate commerce, and agreeing to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity ("RICO conspiracy"), in violation of 18 U.S.C. § 1962(d).[3]  [Doc. 324 at 3].  In Count Eight, he is charged along with others with committing a violent crime in aid of racketeering activity ("VCAR"), by murdering A.V. in violation of Georgia law for the purpose of maintaining and increasing his and his aiders and abettors' position in the Brown Side Locos, in violation of 18 U.S.C. §§ 1959(a)(1)[4] and 2.  [Doc. 324 at 23-24].  Ramos contends that

---

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

[3]     18 U.S.C. § 1962(d) makes it unlawful to conspire to violate, *inter alia*, § 1962(c).

[4]     Title 18 U.S.C. § 1959(a)(1) provides that

Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in

a federal court does not have subject matter jurisdiction over either of these offenses. [Doc. 744].

## II.    The Superseding Indictment

The superseding indictment specifically alleges in Count One that Ramos and others were employed or associated with the Brown Side Locos, an enterprise which was engaged in and the activities of which affected interstate commerce, and that they conspired to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, consisting of multiple acts of robbery, murder, threats involving murder, and felonious dealing in controlled substances, including cocaine and marijuana.  [Doc. 324 at 3-4].  The indictment described the Brown Side Locos as a criminal organization, whose purposes were to preserve and protect and attempt to expand the power, territory, and profits of the

---

violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished--(1) for murder, by death or life imprisonment, or a fine under this title, or both; and for kidnaping, by imprisonment for any term of years or for life, or a fine under this title, or both.

For purposes of § 1959, an " 'enterprise' includes any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. § 1959(b)(2).

enterprise through the use of intimidation and violence, keep their victims in fear of the enterprise and its members and associates through threats of violence and acts of violence, and use money and property obtained by committing criminal acts, throughout the Northern District and elsewhere, to benefit the members and associates of the enterprise.  [*Id.* at 5].

Among the various alleged manner and means of the enterprise, the superseding indictment alleged that members would (1) commit armed robberies of both businesses and individuals to further the member's advancement in the enterprise and for the purpose of increasing the reputation of the enterprise in the community; (2) steal automobiles and the property inside, for the purpose of advancing the member's reputation in the enterprise and for increasing the bad reputation of the enterprise in the community, and use the proceeds to benefit the Brown Side Locos; (3) sell and distribute controlled substances, for the purpose of advancing the member's reputation in the enterprise and for increasing the bad reputation of the enterprise in the community, and use the proceeds to benefit the enterprise; and (4) commit and conspire, attempt, and threaten to commit acts of violence against rival gang members for the purpose of protecting and expanding the enterprise's territory and criminal operations, and for the purpose of increasing the bad reputation of the enterprise in the

4

community at large.  [*Id.* at 7-8].  In this regard, the superseding indictment alleges as an overt act in furtherance of the conspiracy that on October 27, 2002, Ramos and two codefendants killed A.V., a person they suspected of being a rival gang member, by shooting him with a firearm.  [*Id.* at 17].  This act is also charged as a substantive VCAR count (Count Eight), alleging that Ramos and two of his codefendants killed A.V. for the purpose of increasing their positions in the Brown Side Locos.  [*Id.* at 23-24].

### III.    *Arguments of the Parties*

Ramos argues that the Court does not have subject matter jurisdiction over these two offenses because the crimes alleged to have been committed by or on behalf of the enterprise (primarily murder and robbery) are wholly intrastate activities beyond the reach of Congress's Commerce Clause powers, and although the superseding indictment contains one specific allegation of drug dealing, he personally is not alleged to have been a part of any drug possession or distribution offenses.  Instead, he argues, the indictment focuses on individual efforts of "young street toughs" to preserve their reputations and advance their positions in the gang, none of whose activities affect commerce.  [Doc. 744 at 19].

5

He begins his argument by pointing out that in 1995 the U.S. Supreme Court began reigning in the expansion of Congress's Commerce Clause power, in three decisions:  *United States v. Lopez*, 514 U.S. 549 (1995), *United States v. Morrison*, 529 U.S. 598 (2000), and *United States v. Jones*, 529 U.S. 848 (2000).  [Doc. 744 at 13].  He contends that based on these cases, the Supreme Court has rejected the argument that Congress may regulate non-economic violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce, and he further argues that unless the intrastate violence is directed at the instrumentalities, channels, or goods involved in interstate commerce, such acts are solely the province of the States to punish.  [*Id.* at 14 (citing *Morrison*, 529 U.S. at 617-18)].  He submits that *Lopez* permits federal jurisdiction over purely intrastate activity only when it " 'substantially affects' " interstate commerce, [*id.* at 15 (quoting *Lopez*, 514 U.S. at 564)], and he argues that the *Lopez/Morrison/Jones* troika of cases rejected the exercise of federal jurisdiction over violence that merely might interfere in the future with interstate commerce, such as in *Lopez*, where Congress sought to outlaw possession of a firearm on school property on the grounds that it might diminish learning and thereby inhibit commerce in the future, or *Morrison*, where the Court held

6

that the Commerce Clause did not permit Congress to legislate a federal cause of action to victims of gender-motivated violence.  [*Id.* at 15-17].

Ramos goes on to argue that the charges against him contravene the rationales of *Lopez*, *Morrison*, and *Jones*, because the superseding indictment alleges that he and several codefendants murdered individuals, which killings ostensibly prevented the victims from engaging in commerce in the future.  [*Id.* at 16].  He also argues that the Supreme Court cases prohibit using the "aggregate effect" theory of federal commerce power to federally criminalize non-economic violent criminal conduct based only on that conduct's aggregate effect on interstate commerce.  [*Id.* at 17 (citations omitted)].

Ramos then argues that in the present case, the Government, in an effort to combat intrastate street gang violence, is improperly trying to fit the square peg of gang violence into the round hole of the RICO statute.  [*Id.* at 18].  He submits that Congress passed the RICO Act in 1970 for the purpose of dismantling " 'organized' crime,' " while in this case, the enterprise is a street gang whose alleged predicate acts in furtherance of the enterprise are limited to intrastate acts of murder and robbery, as well

as certain allegations of drug possession, (Count One, ¶¶ 31,[5] 38,[6] 39,[7] and 41[8]), and one general allegation of drug distribution, (*id.*, ¶ 37).[9] Ramos points out that he is not named in any of the drug possession or distribution allegations, but rather he is only alleged to have been involved in the shooting death of another. [*Id.* at 18-19].

Ramos then argues that this is an atypical RICO prosecution because, particularly as to him, there is no economic impact whatsoever; in general, there are only a few allegations concerning controlled substances that amount to any economic activity at all; actions allegedly designed to enhance the actors' reputations or positions in the street gang are hardly economic activity; and the robbery and theft allegations are all

_____

[5] Count One, ¶ 31 alleges that co-defendant Maynard-Reyes possessed marijuana and a firearm. [Doc. 324 at 15].

[6] Count One, ¶ 38 alleges that codefendant Hernandez possessed marijuana, razor blades, scales, baggies, cocaine, a 12-gauge shotgun, and an amount of cash. [Doc. 324 at 16].

[7] Count One, ¶ 39 alleges that codefendants Cantu and Quiroz possessed marijuana, cocaine, cash drug proceeds, and a 9mm handgun. [Doc. 324 at 16].

[8] Count One, ¶ 41 alleges that codefendant Roldan possessed cocaine. [Doc. 324 at 16].

[9] Count One, ¶ 37 alleges that from February 2002 to the fall of 2002, codefendants Quiroz, Roldan, and Torres distributed drugs for higher-ranking Brown Side Locos and Latin Kings members to earn advancement in Brown Side Locos. [Doc. 324 at 16].

locally based offenses. [*Id.* at 19 & n.2]. Instead, Ramos contends, most of the activity alleged in the indictment identifies the individual gang members' assembly and speech about nondescript past conduct and suggested future acts; the potential for intimidation of unidentified future or unknown witnesses to unplanned future acts; the agreement to teach and enforce unidentified gang rules; the identification of hand signs and group colors; the attendance of meetings; the payment of nominal period dues; and the agreement to lend non-specific financial support to fellow members who are in custody. [*Id.* at 19-20]. He contends that the specific conduct, particularly that alleged against him, does not sufficiently create an interstate nexus with commerce as required by *United States v. Robertson*, 514 U.S. 669, 672 (1995) (defining engaging "in commerce" as "directly engaged in the production, distribution, or acquisition of goods or services in interstate commerce") (citation omitted), [Doc. 744 at 21], and federalizing these non-economic acts would " 'obliterate' the distinction between 'what is truly national and what is truly local' " in violation of *Morrison*, *Jones*, and *Lopez*. [*Id.* (quoting, without attribution, *Morrison*, 529 U.S. at 617-18)]. He submits that because none of the conduct alleged against him either truly affected commerce or at best constituted no more than a *de minimis* connection to interstate commerce, the superseding indictment as to him overreaches and should dismissed. Further, Ramos

9

relies upon the Sixth Circuit decision in *United States v. Wang*, 222 F.3d 234, 238-40 (6th Cir. 2000), where a defendant's conviction for a Hobbs Act robbery of a private home, in violation of 18 U.S.C. § 1951, was reversed because the aggregate *de minimis* effects on commerce were found to be improperly fortuitous, speculative, or required a long chain of causal inference. [Doc. 744 at 22-23].

Ramos further argues that the allegations of murder and robbery in the indictment do not satisfy the Court's subject matter jurisdiction, contending that it is questionable that the *de minimis* test is even appropriate given that any connection to interstate commerce is so attenuated and supported solely by layers of inference. [*Id.* at 23]. He also contends that if the *de minimis* test applies at all, it fails because the aggregation principle also is not applicable here, since there is no direct, substantial economic effect on interstate commerce, particularly with regard to the conduct with which Ramos is charged. As a result, Ramos argues that both Counts One and Eight must be dismissed. [*Id.* at 23-24].

In opposition, the Government, asserting that Ramos is making a facial challenge to the RICO statute as well as a challenge to its application to him, argues that Ramos is wrong on both counts. It submits that *Lopez* identified three broad categories of activity that Congress could regulate under the Commerce Clause: (1) the use of the

10

channels of interstate commerce; (2) the instrumentalities of interstate commerce or persons or things in interstate commerce, even though the threat to be prevented comes only from intrastate activities; and (3) those activities having a substantial relation to interstate commerce, that is, those activities that substantially affect interstate commerce. [Doc. 747 at 2-3]. It then points out that in *Lopez*, the Court held that the first two categories were inapplicable to analysis of the statute under consideration in that case (possession of a firearm within proximity to a school) and, in discussing the third category, the Court first noted that it upheld federal power to regulate a number of intrastate economic activities that had a substantial effect on interstate commerce, such as intrastate coal mining, intrastate extortionate credit transactions, restaurants using substantial interstate supplies, hotels catering to interstate customers, and the consumption of homegrown wheat. [*Id.* at 3 (citations omitted)]. The Government notes that the *Lopez* court concluded that the gun statute at issue in that case had nothing to do with commerce and could not be upheld as a regulation of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce. [*Id.* at 4 (quoting *Lopez*, 514 U.S. at 561)]. The Government further submits that in *Morrison*, the Supreme Court held that Congress lacked the authority under the Commerce Clause to provide

11

a civil remedy for victims of gender-motivated crimes of violence on the grounds that gender-motivated violence was not economic activity, [*id.* (citing *Morrison*, 529 U.S. at 613)], and because the statute lacked an express jurisdictional element which may establish that the statute is a proper exercise of Congress's power under the Commerce Clause.  [*Id.* at 4-5 (citing *Morrison*, 529 U.S. at 612-13)].

The Government then argues that, on the other hand, in *Gonzalez v. Raich*, 545 U.S. 1 (2005), the Supreme Court, relying in part on *Wickard v. Filburn*, 317 U.S. 111 (1942) (the intrastate-domestic-growing-of-wheat case), upheld the regulation of intrastate, non-commercial cultivation and possession of marijuana because of its potential effect on the interstate market for marijuana.  In doing so, the Government argues, the Court reiterated that Congress had the power to regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce, recognizing that "when 'a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under the statute is of no consequence."  [*Id.* at 5-6 (quoting *Raich*, 545 U.S. at 17)].  The Government further submits that *Raich* relied heavily on *Wickard* in holding that Congress can properly regulate purely intrastate activity that is not "commercial," in that it does not produce a good for sale, if Congress concludes that

12

failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity.  [*Id.* at 6 (quotation omitted)].  The Government argues that the lesson from *Raich* and *Wickard* is that Congress's Commerce Clause authority may be based on the aggregate effect of wholly intrastate economic activity but generally may not be based on the aggregate effect of wholly intrastate non-economic or noncommercial activity.  [*Id.*].

The Government goes on to argue that there are fundamental distinctions between whether Congress has the authority under the Commerce Clause to enact a statute and whether the evidence at trial is sufficient to establish the jurisdictional element of an offense having an effect on or nexus to interstate commerce.  [*Id.*].  It argues that RICO is a valid exercise of Congress's Commerce Clause powers on its face.  [*Id.* at 9-10].  It also argues that the fact that the Government must prove that the RICO enterprise's activities affected commerce weighs heavily in favor of a finding that the statute is a legitimate exercise of Congress's Commerce Clause authority and thus is constitutional as applied.  [*Id.* at 10 (citations omitted)].  In this regard, it submits that it only needs to establish that the enterprise's activities, and not each predicate act, affected commerce, [*id.* at 11 (citing *United States v. Flores*, 572 F.3d 1254, 1267 (11th Cir. 2009), and *United States v. Pipkins*, 378 F.3d 1281,

1295 (11th Cir. 2005), *judgment vacated on other grounds* 544 U.S. 902 (2005))]. It further contends that because the indictment alleges that Ramos was a member or associate of the affairs of an enterprise whose activities affected commerce and that Ramos and his coconspirators agreed to conduct and participate in the affairs of the enterprise through a pattern of racketeering activity, Count One is properly pleaded. [*Id.*].

Next, the Government argues that the exact argument that Ramos makes was rejected in *United States v. Alvarado-Linares*, Crim. Action No. 1:10-CR-086-RWS-ECS, 2011 WL 7807742 (Nov. 12, 2011) (R&R), *adopted* 2012 WL 1632048 (N.D. Ga. May 8, 2012) (Story, J.). [Doc. 747 at 11-12 (quoting 2011 WL 7807742 at *2)]. In that case, the court concluded that the indictment's allegations that interstate commerce was affected by the defendants' criminal actions was sufficient to state an offense and that whether their activities constituted a direct substantial economic effect on interstate commerce was not a ripe issue because it was a matter of proof by the Government at trial. *Alvarado-Linares*, 2011 WL 7807742 at *2. The Government also relies upon the Ninth Circuit decision in *United States v. Fernandez*, 383 F.3d 1199, 1218 (9th Cir. 2004), where the court held that a conclusory allegation in a RICO indictment of the effect of alleged intrastate criminal

14

activity on interstate commerce was permissible.  [*Id.* at 12-13 (additional citations omitted)].  Finally, the Government argues that because Ramos faults the VCAR count for the same reasons, that challenge also should be rejected.  [*Id.* at 13].

Ramos did not file a reply.  (*See* Dkt.).

### IV.    Discussion

The Government has the better argument.  First, to the extent that Ramos is making a facial challenge to the RICO statute, he is required to establish that there is no set of circumstances under which the act would be invalid, that is, that the act is unconstitutional in all of its applications.  *United States v. Martinez*, 736 F.3d 981, 991 (11th Cir. 2013).  In reviewing a facial challenge, the Court must presume that the statute is constitutional and may invalidate it "only upon a plain showing that Congress has exceeded its constitutional bounds."  *Morrison*, 529 U.S. at 607.  It also must consider the various constructions of the statute and, if the statute can be construed to avoid constitutional questions, it must do so.  *United States ex rel Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1904); *see also Jones v. United States*, 529 U.S. 848, 857 (2000) ("where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter") (quoting *Delaware &*

15

*Hudson Co., id.*); *United States v. Allen*, 190 F.3d 1208, 1213 (11th Cir. 1999) (same).

While *Lopez*, *Morrison*, and *Jones* set forth principled limitations on Congress's power

under the Commerce Clause to regulate non-economic crimes "based solely on that

conduct's aggregate effect on interstate commerce," *see Morrison*, 529 U.S. at 617-18,

none of the cases cited by Defendant involve challenges to RICO or the congressional

authority to regulate that which RICO makes unlawful.  RICO prohibits participation

in an enterprise engaging in activities that affect interstate commerce through a pattern

of racketeering activity.  *See* 18 U.S.C. § 1962(c).  As the *Alvarado-Linares* court

recognized, cases in this circuit have interpreted the term "affect interstate commerce"

in the RICO context as requiring "only a slight effect on interstate commerce." *United*

*States v. Flores*, 572 F.3d 1254, 1267 (11th Cir. 2009) (citing *United States v. Beasley*,

72 F.3d 1518, 1526 (11th Cir. 1996)). The statute defines "racketeering activity" to

include "any act or threat involving murder, kidnaping . . . [or] robbery . . . which is

chargeable under State law."  18 U.S.C. § 1961(1).  A pattern of such activity is

established with proof of "at least two acts of racketeering activity."  *Id.* § 1961(5).

To the extent that Defendant challenges the constitutionality of RICO by citing

*Lopez* and its progeny, the Court observes that the Eleventh Circuit has upheld a similar

statute subjected to facial attack following *Lopez*.  *See United States v. Castleberry*,

16

116 F.3d 1384, 1387 (11th Cir. 1997) (upholding Hobbs Act, 18 U.S.C. § 1951(a), to facial challenge, holding that the jurisdictional element in any way or degree obstructs, delays, or affects commerce or the movements of any article or commodity in commerce" defeats the *Lopez* challenge because "[u]nlike the statute involved in *Lopez*, the Hobbs Act contains a jurisdictional requirement that the extortion be connected in any way to interstate commerce").   The violations charged in the present case involve statutes that have similar jurisdictional requirements.   *See supra* nn. 2 & 4.   Thus, the Court rejects Ramos's facial challenge.

Ramos's as-applied challenge to the indictment also fails.   While Ramos is charged only with a narrow part of the criminal conduct attributed to the affairs of the enterprise, and even assuming for purposes of discussion that *his* activity was non-economic, it is not necessary that the predicate acts affect interstate commerce, only that the enterprise's activities affect commerce.   *See United States v. Stratton*, 649 F.2d 1066, 1075 (5th Cir. Unit A July 6, 1981) (rejecting argument that RICO conspiracy conviction was invalid where there was no evidence that coconspirators' activities were linked with interstate commerce, holding that "RICO requires only that the activities of the enterprise be connected with interstate commerce") (citations

17

omitted)[10]; *see also United States v. Bagnariol*, 665 F.2d 877, 892 (9th Cir. 1981) ("[T]he [RICO] statute requires that the activity of the enterprise, not each predicate act, [affect] interstate commerce."); *United States v. Groff*, 643 F.2d 396, 400 (6th Cir. 1981) ("It is the enterprise, not the individual defendant, which must engage in or affect interstate commerce."); *United States v. Altomare*, 625 F.2d 5, 8 (4th Cir. 1980) ("The government need not demonstrate that the alleged acts of racketeering themselves directly involved interstate commerce.").

In this case, the superseding indictment properly alleges federal subject matter jurisdiction, and therefore the Court rejects Ramos's arguments that federal subject matter jurisdiction is absent. An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). "[T]he sufficiency of a criminal indictment is determined from its face." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). "By now, it is axiomatic that an indictment is sufficient if it '(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended

---

[10]      In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent decisions of the Fifth Circuit, including Unit A panel decisions of that circuit, handed down prior to October 1, 1981. *See United States v. Todd*, 108 F.3d 1329, 1333 n.5 (11th Cir. 1997); *Limelight Prods., Inc., v. Limelite Studios, Inc.*, 60 F.3d 767, 769 n.1 (11th Cir. 1995).

18

against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.' " *United States v. Woodruff*, 296 F.3d 1041, 1045 (11th Cir. 2002) (citation omitted). It is generally sufficient that an indictment "charges in the language of the statute." *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004).  To establish a RICO conspiracy, " 'the government must prove that the defendant[ ] objectively manifested, through words or actions, an agreement to participate in the conduct of the affairs of the enterprise through the commission of two or more predicate crimes.' " *United States v. Godwin*, 765 F.3d 1306, 1323 (11th Cir. 2014) (quoting *United States v. Starrett*, 55 F.3d 1525, 1543 (11th Cir. 1995) (quotation marks omitted)); *see also United States v. Hein*, 395 Fed. Appx. 652, 656 (11th Cir. Sept. 14, 2010) ("To establish a RICO conspiracy the government must show that the defendant agreed to participate in an enterprise whose purpose was to engage in a pattern of racketeering activity."); *United States v. Carter*, 721 F.2d 1514, 1531 (11th Cir. 1984) (holding that when a defendant agrees to participate in the conduct of an enterprise's affairs with the objective of violating a substantive RICO provision, it is not necessary that the defendant agree to personally commit two predicate acts for the required pattern of racketeering).

In this case, the superseding indictment alleges that Defendant and his coconspirators were members of a racketeering enterprise and participated in a pattern of racketeering activity.  As stated, the indictment alleges a cognizable federal offense. Should a question remain as to whether the Government has proved that the alleged criminal activities establish the necessary nexus to commerce, Defendant may raise this issue at trial after the close of the Government's case.  *Alvarado-Linares*, 2011 WL 7807742 at *2.

For all of these reasons, the undersigned rejects Ramos's challenge to Count One. As Ramos's challenge to Count Eight asserted no grounds independent of his Count One arguments, the Court similarly rejects his challenge to Count Eight.

## V.     *Conclusion*

For the reasons set forth above, the undersigned **RECOMMENDS** that Ramos's motion to dismiss the superseding indictment, [Doc. 744], be **DENIED**.

The Court has now ruled on all pretrial matters referred to it and has not been advised of any further issues with discovery or impediments to scheduling Defendant's trial.  Accordingly, this case is **CERTIFIED READY FOR TRIAL**.

AO 72A
(Rev.8/82)

**IT IS SO RECOMMENDED and CERTIFIED**, this ___19th___ day of December, 2016.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)